LOKEN, Circuit Judge.
Defendant Medtronic, Inc., designed, manufactured, and sold the Sprint Fidelis Lead, a wire that delivers signals that allow an implantable cardiac defibrillator to detect an abnormal heart rhythm and deliver a shock to help the heart return to an appropriate rhythm. After Medtronic recalled the product in October 2007, Anna Bryant and other patients with implanted Sprint Fidelis Leads filed suits across the country against Medtronic and its affiliates (collectively, Medtronic) asserting tort and breach of warranty claims for injuries allegedly caused by the defective leads. The cases were transferred to the District of Minnesota for pretrial proceedings by the Judicial Panel on Multidistrict Litigation.
Plaintiffs filed a Master Consolidated Complaint seeking damages and equitable relief on behalf of “all Plaintiffs who had Sprint Fidelis Leads implanted,” asserting some twenty distinct state law causes of action including failure to warn, defective design and manufacturing, breach of express warranty, and fraud. Applying the preemption principles of Riegel v. Medtronic, Inc., 552 U.S. 312, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008), and the pleading principles of Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), "the district court[1] granted Medtronic’s motion to dismiss and denied Plaintiffs’ post-judgment motions for recusal and for leave to file an amended complaint. Plaintiffs appeal these rulings. We affirm.
I. Background
In the Medical Device Amendments to the Federal Food, Drug and Cosmetic Act (“MDA”), Congress authorized the Food and Drug Administration (“FDA”) to regulate the safety and effectiveness of medical devices. The Sprint Fidelis Lead was a Class III device, one that presents a potentially unreasonable risk of injuring patients or that is used to sustain life. See 21 U.S.C. § 360c(a)(1)(C); Medtronic, Inc. v. Lohr, 518 U.S. 470, 477, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). Before a new Class III device may be marketed, the manufacturer must assure the FDA through a rigorous Pre-Market Approval (“PMA”) process that the device is safe and effective. Once the product is approved, the manufacturer may not change its design, manufacturing process, labeling, or other attributes that would affect safety or effectiveness without filing a PMA Supplement. 21 C.F.R. § 814.39(a). The PMA Supplement is reviewed using the same standard as the original PMA. See generally Riegel, 552 U.S. at 315-19, 128 S.Ct. 999.
In December 1993, the FDA granted Medtronic premarket approval for the Transvene Lead System. Progressively smaller leads, such as the Sprint Quattro, were later approved in a series of PMA Supplements. In June 2004, the FDA approved a PMA Supplement for the Sprint Fidelis Lead. Patients with implanted Sprint Fidelis Leads began suffering unnecessary shocks. Dr. Robert G. Hauser of the Minneapolis Heart Institute and his colleagues investigated patient complaints, published a report finding that the Sprint Fidelis Lead was more likely to fracture than other types of leads, met with Medtronic to voice their concerns, and advised the FDA of those concerns. Despite knowing the leads were unsafe, Plaintiffs *1204 allege,[2] Medtronic undertook a vigorous defense of its product that included sending a “Dear Doctor” letter to practitioners asserting that failures may be the result of improper surgical technique and assuring doctors that the Sprint Fidelis Leads performed as well as other Medtronic leads.
In May 2007, Medtronic applied for a PMA Supplement approving design and manufacturing changes to the Sprint Fidelis Leads without, Plaintiffs allege, advising FDA of the high rate of failures. A PMA Supplement was approved in July. Medtronic continued to sell previously manufactured Sprint Fidelis Leads, “finally” filed 120 adverse event reports in September, and suspended sales in early October, but doctors continued to implant Sprint Fidelis Leads. Not until October 15, 2007, did Medtronic announce a worldwide recall of the Sprint Fidelis Lead. Soon after, the FDA announced a Class I recall, the most serious type of medical device recall. These product liability lawsuits followed.
The MDA contains an express preemption provision: no State “may establish or continue in effect with respect to a device ... any requirement (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device.” 21 U.S.C. § 360k(a).[3] In Riegel, the Court held that, for § 360k(a) preemption purposes, (i) FDA pre-market approval is “federal safety review” that results in federal “requirements” specific to the approved device, and (ii) common law product liability claims result in “state requirements” that are preempted to the extent they relate to the safety and effectiveness of the device and are “different from, or in addition to,” the federal requirements established by PMA approval. 552 U.S. at 322-24, 128 S.Ct. 999. However, the Court noted, § 360k “does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case ‘parallel,’ rather than add to, federal requirements.” Id. at 330, 128 S.Ct. 999.
The MDA also provides that all actions to enforce FDA requirements “shall be by and in the name of the United States,” 21 U.S.C. § 337(a). In Buckman Co. v. Plaintiffs’ Legal Comm., 531 U.S. 341, 349 n. 4, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001), the Court construed § 337(a) as barring suits by private litigants “for noncompliance with the medical device provisions.” Read together—
Riegel and Buckman create a narrow gap through which a plaintiffs state-law claim must fit if it is to escape express or implied preemption. The plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing because the conduct violates the, FDCA (such a claim would be impliedly preempted under Buckman).
Riley v. Cordis Corp., 625 F.Supp.2d 769, 777 (D.Minn.2009). The contours of the parallel claim exception were not addressed in Riegel and are as-yet ill-defined.
*1205 Medtronic moved to dismiss the Master Consolidated Complaint, arguing that the claims were preempted by § 360k(a). The district court granted the motion, holding all claims preempted. In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig., 592 F.Supp.2d 1147 (D.Minn.2009) (“Medtronic Leads ”). Plaintiffs’ product liability claims (design defect, manufacturing defect, failure to warn, breach of warranty, and fraud, among others) unquestionably relate to the safety or effectiveness of the Sprint Fidelis Lead. Thus, the crucial question on appeal is whether these claims are parallel claims that avoid preemption because they would not impose state requirements “different from or in addition to” the federal requirements established by PMA approval of the Sprint Fidelis Lead.[4]
II. Parallel Claim Issues
A. Failure to Warn and Related Claims. In the Master Consolidated Complaint, Plaintiffs alleged that Medtronic failed to adequately warn consumers of “known defects” and that the Sprint Fidel-is Leads presented an unreasonably dangerous risk beyond what the ordinary consumer would reasonably expect. These claims are preempted by § 360k. The FDA’s PMA approval includes specific language for Class III device labels and warnings. Plaintiffs did not allege that Medtronic modified or failed to include FDA-approved warnings. Rather, they alleged that, by reason of state law, Medtronic was required to give additional warnings, precisely the type of state requirement that is “different from or in addition to” the federal requirement and therefore preempted. See Riegel, 552 U.S. at 330, 128 S.Ct. 999.
Even if federal law allowed Medtronic to provide additional warnings, as Plaintiffs alleged, any state law imposing an additional requirement is preempted by § 360k. “Where a federal requirement permits a course of conduct and the state makes it obligatory, the state’s requirement is in addition to the federal requirement and thus is preempted.” McMullen v. Medtronic, Inc., 421 F.3d 482, 489 (7th Cir.2005), cert. denied, 547 U.S. 1003, 126 S.Ct. 1464, 164 L.Ed.2d 246 (2006). Plaintiffs’ reliance on Wyeth v. Levine, — U.S. -, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009), for a contrary rule is unavailing. Wyeth turned on implied conflict preemption, not express preemption, because Congress did not extend the express preemption for medical devices in § 360k to prescription drugs. Id. at 1200.
Plaintiffs further alleged that Medtronic was negligent in continuing to sell the original version of the Sprint Fidelis Lead after it had received FDA approval to sell a modified version. However, as the FDA did not prohibit Medtronic from continuing to sell the unmodified lead, a state requirement to that effect would be “different from or in addition to” the federal requirement and preempted under § 360k. Finally, Plaintiffs alleged that Medtronic failed to provide the FDA with sufficient information and did not timely file adverse event reports, as required by federal regulations. As the district court concluded, 592 F.Supp.2d at 1161, these claims are simply an attempt by private parties to enforce the MDA, claims foreclosed by § 337(a) as construed in Buckman, 531 *1206 U.S. at 349, 353, 121 S.Ct. 1012. See Hughes v. Boston Scientific Corp., 669 F.Supp.2d 701, 710-12 (S.D.Miss.2009).
B. Design Defect Claims. The Master Consolidated Complaint alleged that Medtronic designed the Sprint Fidelis Leads “in a dangerous and defective condition” and “in a manner violative of the [MDA].” Absent concrete allegations that the product sold by Medtronic was not the product design approved in the PMA Supplement, these are not parallel claims. Rather, they are attacks on the risk/benefit analysis that led the FDA to approve an inherently dangerous Class III device. Such claims are expressly preempted by § 360k. See Mitchell v. Collagen Corp., 126 F.3d 902, 913-14 (7th Cir.1997), cert. denied, 523 U.S. 1020, 118 S.Ct. 1300, 140 L.Ed.2d 467 (1998). “State tort law that requires a manufacturer’s [Class III device] to be safer, but hence less effective, than the model the FDA has approved disrupts the federal scheme.” Riegel, 552 U.S. at 325, 128 S.Ct. 999.
C. Manufacturing Defect Claims. Plaintiffs assert that the Sprint Fidelis Leads were defectively manufactured because Medtronic used unreliable direct resistance spot welding to affix the device’s cables to electrodes. Count II of the Master Consolidated Complaint further alleged that “facilities or controls used by [Medtronic] in the manufacture, packing, storage, or installation of the Sprint Fidelis Leads were not in conformity with applicable requirements” of the MDA. In opposing Medtronic’s motion to dismiss, Plaintiffs explained to the district court that the referenced “applicable requirements” were FDA Current Good Manufacturing Practices (“CGMPs”) found in the Quality System Regulations applicable to all medical devices. See 21 C.F.R. Part 820.
The district court concluded that Plaintiffs’ general allegations of failure to comply with CGMPs — practices that FDA has described as “an umbrella quality system” providing “general objectives” for all device manufacturers — do not save these claims from preemption under § 360k because Plaintiffs failed to identify any specific federal requirement in the PMA approval for the Sprint Fidelis Leads that forms the basis for an unpreempted parallel claim. By contrast, the court noted, the plaintiff in Rollins v. St. Jude Medical, 583 F.Supp.2d 790, 799-800 (W.D.La.2008), alleged that the Class III device manufacturer failed to comply with the device’s specific PMA requirements. As a result, the court concluded, 592 F.Supp.2d at 1157-59, Plaintiffs failed to allege a parallel manufacturing defect claim with the detail required by Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (“[A] plaintiffs obligation to provide the ‘grounds’ of his ‘entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.”). Accord Ashcroft v. Iqbal,-U.S.-, 129 S.Ct. 1937, 1951, 173 L.Ed.2d 868 (2009).
On appeal, Plaintiffs primarily argue that the district court’s application of Twombly in this case held them to an impossible pleading standard because the FDA’s specific federal manufacturing requirements are set forth in the agency’s PMA approval files that are accessible, without discovery, only to Medtronic and to the FDA. This argument — which focuses on the timing of the preemption ruling — would have considerable force in a case where a specific defective Class III device injured a consumer, and the plaintiff did not have access to the specific federal requirements in the PMA prior to commencing the lawsuit. Compare Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 598 (8th Cir.2009) (while plaintiffs *1207 “must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, we must also take account of their limited access to crucial information.”).[5]
But that is not the case Plaintiffs presented to the district court. Plaintiffs alleged that state law entitles every person who has an implanted Sprint Fidelis Lead to damages (for emotional distress) and to equitable relief (monitoring or implanting of a replacement device) because all Sprint Fidelis Leads have an unreasonably high risk of fracture failure. In the district court, Plaintiffs conceded that the PMA Supplement doubtless authorized the use of spot welding, and they specifically disclaimed the need for discovery in opposing Medtronic’s motion to dismiss. Thus, as pleaded and argued, the manufacturing defect claims are not parallel, they are a frontal assault on the FDA’s decision to approve a PMA Supplement after weighing the product’s benefits against its inherent risks. On this record, the district court properly concluded these claims are preempted.
At oral argument, Plaintiffs posited a hypothetical case in which the plaintiffs could not know without discovery that every Class III device was defectively manufactured because the PMA approval required 400 degree welds but the manufacturer used a 300 degree welding process. This hypothetical well illustrates the care that courts must exercise in applying Riegel’s parallel claim principle at the pleading stage, particularly to manufacturing defect claims. But here, Plaintiffs simply failed to adequately plead that Medtronic violated a federal requirement specific to the FDA’s PMA approval of this Class III device. The district court did not abuse its discretion in denying Plaintiffs’ motion to reconsider the dismissal order and grant their belated request for discovery to see if they could find such a requirement. Medtronic Leads, 2009 WL 294353 at *3 (D.Minn. Feb.5, 2009).
III. Breach of Express Warranty Claims
In the Master Consolidated Complaint, Plaintiffs alleged the breach of express warranties that Sprint Fidelis Leads “were safe, effective, fit and proper for their intended use.” The district court concluded that these claims are preempted because “the safety and effectiveness of the leads are matters solely for the FDA, and because the FDA determined that the leads were safe and effective.” Medtronic Leads, 592 F.Supp.2d at 1164. On appeal, Plaintiffs argue that express warranties are not state “requirements” preempted by § 360k because “the ‘requirement^’ imposed by an express warranty claim are not ‘imposed under State law,’ but by the warrantor.” Cipollone v. Liggett Group, Inc., 505 U.S. 504, 525, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (plurality opinion) (emphasis in original).
Though Cipollone construed a different, narrower express preemption provision, the opinion suggests that breach of express warranty claims are not expressly preempted by § 360k. See In re Medtronic, Inc., Implantable Defibrillators Litig., *1208 465 F.Supp.2d 886, 898 (D.Minn.2006); contra Parker v. Stryker Corp., 584 F.Supp.2d 1298, 1303 (D.Colo.2008). However, we need not decide that issue. To succeed on the express warranty claim asserted in this case, Plaintiffs must persuade a jury that Sprint Fidelis Leads were not safe and effective, a finding that would be contrary to the FDA’s approval of the PMA Supplement. A state common law claim is preempted if it “actually conflicts with the federal requirement — either because compliance with both is impossible, or because the state requirement stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.” Lohr, 518 U.S. at 507, 116 S.Ct. 2240 (Breyer, J., concurring) (quotations and citations omitted). The MDA in § 360k expressly prohibits States from imposing requirements “in addition to” federal requirements. The district court correctly concluded that this express warranty claim interferes with the FDA’s regulation of Class III medical devices and is therefore conflict preempted. See Gomez v. St. Jude Medical Daig Div., Inc., 442 F.3d 919, 932 (5th Cir.2006); cf. Pet Quarters, Inc. v. Depository Trust & Clearing Corp., 559 F.3d 772, 780-81 (8th Cir.2009).
IV. Denial of Leave to Amend
 Following the district court’s dismissal of their claims and denial of their motion to reconsider, Plaintiffs moved for leave to file an 85-page Revised Amended Master Consolidated Complaint. The district court denied the motion because (i) Plaintiffs did not seek leave to amend before the adverse dismissal ruling, (ii) many of the allegedly newly-discovered facts were available before they filed the Master Consolidated Complaint, and (iii) “even if not untimely the Court would deny Plaintiffs’ Motion because the proposed amendments would be futile.” Medtronic Leads, 2009 WL 1361313 at *1-2 (D.Minn. May 12, 2009). Plaintiffs appeal that ruling. We review denial of leave to amend for an abuse of discretion, but the legal conclusions underlying a determination of futility are reviewed de novo. In re NVE Corp. Sec. Litig., 527 F.3d 749, 752 (8th Cir. 2008).
Post-dismissal motions to amend are disfavored. United States ex rel. Roop v. Hypoguard USA, Inc., 559 F.3d 818, 824 (8th Cir.2009). The untimeliness factor is particularly acute in this case because Plaintiffs did not seek leave to amend until after they failed to persuade the district court to reconsider its dismissal order. On the merits of their motion, though the proposed amended complaint added more factual details, it again alleged no violation of a specific federal requirement. The amended complaint continued to allege that every person with an implanted Sprint Fidelis Lead is entitled to damages and equitable relief, the frontal assault on the FDA’s PMA approval that resulted in the district court’s dismissal. After careful review of the proposed amended complaint, we agree with the district court’s futility ruling; the court did not abuse its discretion in denying the post-judgment motion to amend. See Briehl v. General Motors Corp., 172 F.3d 623, 629-30 (8th Cir.1999).
V. The Recusal issue
More than one year after the Judicial Panel on Multidistrict Litigation consolidated and transferred what became hundreds of cases to Judge Kyle for pretrial purposes, two months after Judge Kyle dismissed the Master Consolidated Complaint, and one month after he denied the motion to reconsider, Plaintiffs filed a Motion for Recusal based upon the fact that Judge Kyle’s son, Richard Kyle, Jr., is a shareholder at Fredrikson & Byron, a *1209 Minneapolis law firm that represents Medtronic in other matters. Fredrikson & Byron did not represent Medtronic in any matter relating to the Sprint Fidelis Leads. Mr. Kyle Jr. has a criminal defense practice and has never worked on a case on behalf of Medtronic. Judge Kyle denied the motion after thoroughly reviewing the governing law, the facts relevant to the recusal issue, and the “prudential considerations” militating against recusal. Medtronic Leads, 601 F.Supp.2d 1120 (D.Minn.2009). Plaintiffs appeal that ruling.
Plaintiffs knew, or with due diligence could have known, that Medtronic is a significant client of Fredrikson & Byron, and that Judge Kyle’s son is a shareholder of the firm, before the Judicial Panel transferred this litigation to Judge Kyle. Thus, the recusal motion was untimely. It was also a device “interposed for suspect tactical and strategic reasons” following the district court’s adverse rulings. In re Kansas Public Employees Retirement System, 85 F.3d 1353, 1360 (8th Cir.1996). As the grant of such a belated motion would have serious adverse effects on the efficient use of judicial resources and the administration of justice, “on this basis alone, the district court’s ... denial of the recusal motion is affirmed.” Tri-State Fin., LLC v. Lovald, 525 F.3d 649, 654 (8th Cir.), cert. denied, — U.S.-, 129 S.Ct. 630, 172 L.Ed.2d 610 (2008). We reject, summarily, Plaintiffs’ additional contention that Judge Kyle’s response to press inquiries concerning the recusal motion would cause a reasonable person to question his impartiality in these proceedings. See 28 U.S.C. § 455(a). Cf. White v. Nat’l Football League, 585 F.3d 1129, 1138 — 41 (8th Cir.2009); United States v. Fortier, 242 F.3d 1224, 1229-30 (10th Cir.), cert. denied, 534 U.S. 979, 122 S.Ct. 409, 151 L.Ed.2d 310 (2001).
The judgment of the district court is affirmed. Medtronic’s motion to file an oversized 28(j) letter is granted.

. The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota.

. For purposes of reviewing Medtronic's motion to dismiss, we assume that facts pleaded in Plaintiffs’ Master Consolidated Complaint are true. Zutz v. Nelson, 601 F.3d 842, 846 (8th Cir.2010).

. The term "relates to” reflects Congress's "intent to pre-empt a large area of state law.” Altria Group, Inc. v. Good, — U.S.-, 129 S.Ct. 538, 548, 172 L.Ed.2d 398 (2008).

. In opposing Medtronic’s motion to dismiss in the district court, Plaintiffs’ lead argument was that Medtronic lost its federal preemption defense when the Sprint Fidelis Leads were recalled. Plaintiffs briefed this issue on appeal but did not press it at oral argument. We reject the contention for the reasons stated by the district court. Medtronic Leads, 592 F.Supp.2d at 1155-56.

. At oral argument, Medtronic argued Plaintiffs' claims fail because the FDA did not find any violation of federal requirements. Without question, a prior FDA enforcement action is relevant to whether a plaintiff has adequately pleaded a parallel claim against a Class III device manufacturer. See Purcel v. Advanced Bionics Corp., 2008 WL 3874713 at *2 (N.D.Tex. Aug. 13, 2008). But the absence of FDA enforcement does not preclude the assertion of parallel claims and therefore is relevant only at the summary judgment stage or at trial.