GORSUCH, Circuit Judge.
Some medical devices are so risky they can’t be sold without the federal government’s prior approval. While even relatively simple things like bandages face some degree of federal oversight, manufacturers of pacemakers, heart valves, and the like must prove the “safety and effectiveness” of their devices to the FDA’s satisfaction before offering them for sale. Batteries of tests must be performed and presented and the agency’s premarket approval process can take years. Beyond guarding the gate to the.market square, the FDA also acts as censor for those allowed to enter. A manufacturer must receive the agency’s approval for,any instructional or warning label associated with its device. And once the device and label are approved, the manufacturer usually may not change them without the agency’s consent. See 21 U.S.C. § 360e(d)(1)(A), (d)(6)(A)(i); Riegel v. Medtronic, Inc., 552 U.S. 312, 319, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008).
As with most federal regulatory regimes, Congress had to balance competing goods when it enacted the Medical Device Amendments (MDA) to the Federal Food, Drug, and Cosmetics Act (FDCA). Perhaps most notably, it had to weigh the good of ensuring that proposed medical devices are carefully scrutinized for safety against the good of preserving the freedom of patients and doctors to use potentially life-saving technology as they see fit and without undue delay. One arena in which these objectives clashed during the legislative process involved this question: to what extent (if any) should states be able to layer additional. rules on top of Congress’s? Allowing more regulation of medical devices could yield benefits for patient safety. But it could also mean forcing manufacturers to abide not one but fifty-one sets of requirements, a prospect that could deter or delay access to innovative devices and wind up hurting more patients than it helps.
Exercising its authority under the Supremacy Clause, Congress chose to balance these competing considerations by instructing that:
[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
(2) which relates to the safety or effectiveness of the device or to any *1337 other matter included in a requirement applicable to the device under this chapter.
21 U.S.C. § 360k(a).
The question we face is whether this provision forecloses Patricia Caplinger’s state law tort suit against Medtronic. Medtronic produces Infuse, a device that stimulates bone growth to repair damaged or diseased vertebrae. When it approved the device for sale, the FDA required the company to include a warning label instructing that Infuse should “be implanted via an anterior” surgical approach. The label further cautioned that the device’s “safety and effectiveness ... in surgical techniques other than anterior open or anterior laparoscopic approaches have not been established” and that “[w]hen degenerative disc disease was treated by a posterior lumber [sic] interbody fusion procedure with cylindrical threaded cages, posterior bone formation was observed in some instances.” Medtronic Sofamor Danek, InFUSE Bone Graft/LT-CAGE Lumbar Tapered Fusion Device Important Medical Information (2002).
Despite this warning, Ms. Caplinger alleges, Medtronic and its representatives promoted Infuse for use in a posterior surgical approach — an “off-label” use as it’s known in the industry. Ms. Caplinger alleges that' a Medtronic representative personally recommended using the device in this particular way to her and her doctor. All the while, Ms. Caplinger asserts, the company harbored evidence documenting dangers associated with posterior surgical approaches that it kept hidden. According to Ms. Caplinger, she and her doctor relied on Medtronic’s representations and elected to implant the device using a posterior approach' — only to watch complications emerge that could have been avoided had they known the truth about Infuse. Ms. Caplinger alleges that Medtronic’s conduct exposed the company to liability under a variety of state tort theories. But the district court held all of these state law claims either insufficiently pleaded or preempted, and it’s this decision we’re now asked to revisit.
At first glance the answer to this appeal might appear easy enough. Section 360k(a) preempts “any requirement” imposed by states on manufacturers that differs from or adds to those found in the FDCA. Given this expansive language one might be forgiven for thinking all private state law tort suits are foreclosed. After all, a “requirement” usually means a request, need, want, or demand. See 13 The Oxford English Dictionary 682 (2d ed. 1989). And an adverse tort judgment seems to involve just that: a demand that a defendant appear to answer for its conduct and pay damages for failing some state law duty. Certainly some commentators have argued that the obligation to pay state law judgments amounts to an additional state law requirement warranting preemption under § .360k(a). See, e.g., Mark Herrmann & Geoffrey J. Ritts, Preemption and Medical Devices: A Response to Adler and Mann, 51 Food & Drug L.J. 1, 15-16 (1996).
But the answer to this appeal isn’t so simple. The Supreme Court has issued a number of opinions that embody “divergent views” about the proper role of the. MDA’s preemption provision, a fact that has yielded - considerable “uncertainty” among the lower courts seeking to apply the statute to cases like this one. Max N. Helveston, Preemption Without Borders: The Modem Conflation of Tort and Contract Liabilities, 48 Ga. L.Rev. 1085, 1124 (2014); see also Martin v. Medtronic, Inc., 254 F.3d 573, 578-79 (5th Cir.2001) (observing the difficulty in “extracting the *1338 final meaning” of the Supreme Court’s cases in this area); Schouest v. Medtronic, Inc., 13 F.Supp.3d 692, 700 (S.D.Tex.2014) (“Courts have struggled with applying the Supreme Court’s preemption rulings to cases involving the Infuse device.”); Carrelo v. Advanced Neuromodulation Sys., Inc., 777 F.Supp.2d 303, 310 (D.P.R.2011) (noting “the present struggle ... to determine ' whether state-law claims are preempted by the MDA”).
The Supreme Court’s first significant encounter with the MDA’s preemption provision came in Medtronic, Inc. v. Lohr, 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). There the Court rejected the notion that state law tort suits are always preempted. It held that tort suits do not impose néw “requirements” on manufacturers and are not preempted so long as the duties they seek to impose “parallel” duties found in the FDCA. Id. at 495, 116 S.Ct. 2240. The fact that a manufacturer is “required” to defend itself against a damages remedy nowhere provided for in federal law is, the Court indicated, neither here nor there.
But the Court’s answer only invited the next question: when exactly does a state law duty “parallel” a federal law duty enough to evade preemption? That term doesn’t appear in the statute, so its meaning was left entirely to judicial exposition. And in Lohr itself five justices took the view that state and federal law duties “parallel” each other not only when they are identical, but also when state law imposes duties on the defendant that are “narrower, not broader” than those found in the FDCA. Id. So, for example, a state claim requiring a plaintiff to prove that a manufacturer negligently breached a duty of care might survive preemption if a federal regulation would impose strict liability in the same situation.
Now, you might ask, why isn’t a narrower state law requirement at least “different from” a broader federal requirement — and thus preempted by § 360k(a)’s express terms? The Lohr majority acknowledged that a state duty imposing a “narrower requirement” is indeed “ ‘different from’ the federal rules in a literal sense.” Id. And when it comes to interpreting the text of a statute, that’s often the sense that matters most. See, e.g., Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (noting that “when the statute’s language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms” (internal quotation marks omitted)). But all the same the Lohr majority adopted a test that leaves it to lower courts to try to resolve whether a state duty is “literally different” but “narrower” (and thus permissible) or “too different” and “broader” (and thus impermissible). Lower courts have struggled ever since when it comes to trying to decide whether particular state claims do or don’t “parallel” putative federal counterparts. See, e.g., In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig., 623 F.3d 1200, 1204 (8th Cir.2010) (noting that the “contours of the parallel claim exception” are “as-yet ill defined”); Mark Herrmann, David Booth Alden, & Bradley W. Harrison, The Meaning of the Parallel Requirements Exception Under Lohr and Riegel, 65 N.Y.U. Ann. Surv. Am. L. 545, 546 (2010) (“This parallel requirements exception is far from clear.”); David Chang, Note, Internalizing the External Costs of Medical Device Preemption, 65 Hastings L.J. 283, 295 (2013) (noting that the Court’s decisions have not “provide[d] much guidance as to what constitutes a parallel claim”).
*1339 Neither are these the only directions Lohr left us to contend with. Section 360k(a) provides that state laws are preempted to the extent they conflict with “any [federal] requirement applicable under this chapter to the device.” The chapter in question is chapter 9 of title 21 of the U.S.Code, which contains the whole of the FDCA. So, again read literally, it would seem “any” federal requirement imposed by the FDCA is capable of preempting any different or additional state requirement. But again the Lohr majority held otherwise, instructing lower courts that for preemption to take place the FDA must first issue some regulation “specific” to a “particular device.” 518 U.S. at 498-99, 116 S.Ct. 2240 (quoting 21 C.F.R. § 801.1(d)). Put differently, a device must undergo the premarket approval process'— or, the Court suggested, perhaps something like it. See id.; Riegel, 552 U.S. at 322-23, 128 S.Ct. 999. Lawsuits aimed at less highly regulated devices — like those subject only to “general” FDA regulatory requirements applicable to all devices — are not preempted. See Lohr, 518 U.S. at 500, 116 S.Ct. 2240. To be sure, Lohr itself wasn’t unequivocal on this point: the Court acknowledged the possibility that “general” federal requirements might sometimes preempt state requirements. Id. But when it comes to when and what kinds of “general” requirements have preemptive effect, or what sort of device-specific regulations beyond the premarket approval process might bear that same power, Lohr told us little. See Scott W. Sayler & Steven M. Thomas, Post-Decision Diagnosis: Medical Device Preemption Alive and Mostly Well After Medtronic, Inc. v. Lohr, 6 Annals Health L. 185, 196 (1997).
Since Lohr, the Supreme Court has twice revisited and cut back the scope of its initial decision. The first blow fell in Buckman Co. v. Plaintiffs’ Legal Committee, 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001). There the Court addressed 21 U.S.C. § 337(a), a provision authorizing the federal government to enforce the MDA. In that statute’s language and structure the Court found “clear evidence that Congress intended that the MDA be enforced exclusively by the Federal Government.” Id. at 352, 121 S.Ct. 1012. For this reason, Buckman concluded, § 337(a) preempts any state tort claim that exists “solely by virtue” of an FDCA violation — say, a claim against a manufacturer for violating the FDCA’s prohibition against making false statements to the FDA during the device-approval process. Id. at 353, 121 S.Ct. 1012. At the same time, the Court left undisturbed the portion of Lohr allowing state lawsuits based on “traditional state tort law” that “predate[s]” the FDCA but happens to “parallel” it. Id. So it is that lower courts must now accept both the notion that § 337(a) shows Congress intended the federal government to enjoy exclusive enforcement authority over the MDA and the notion that § 360k(a) permits private tort suits that do no more than parallel the MDA. See Catherine M. Sharkey, Tort-Agency Partnerships in an Age of Preemption, 15 Theoretical Inquiries L. 359, 369-70 (2014) (noting the tension in allowing private tort suits in light of § 337(a)’s grant of exclusive enforcement authority).
The Court retreated further from Lohr in Riegel v. Medtronic, Inc., 552 U.S. 312, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008). As Riegel saw it, the clause in § 360k(a) providing that “any [state] requirement ... which relates to the safety or effectiveness of the device” should be read literally: any state requirement, whether device specific or generally applicable, is preempted when it differs from or adds to federal requirements. 552 U.S. at 327-28, 128 S.Ct. 999. While perhaps unremarkable on its own *1340 terms, this invited a new tension with Lohr and its suggestion that (at least usually) only device-specific federal requirements bear preemptive power even though the statute’s literal language suggests “any” federal requirement hold that power. True, Lohr and Riegel formally addressed different clauses in § 360k(a) — Lohr interpreted the “any” federal requirements clause and Riegel discussed the “any” state requirements clause. But it’s no small mystery why the same word — “any”— should bear such different meanings in two such similar clauses that lie cheek by jowl in the same statutory subsection.
How are we supposed to apply all these competing instructions? It’s “no easy task.” Martin, 254 F.3d at 579. Even the usually straightforward job of laying out the rules governing our review is a real “struggle[ ]” in this area. Sehouest, 13 F.Supp.3d at 700. One can’t help but wonder if perhaps some of those rules warrant revisiting and reconciliation. But .if we understand our directions, it seems we aren’t supposed to ask whether Ms. Caplinger wishes to use state tort law to impose on Medtronic a safety requirement that is. “different from, or in addition to” a federal requirement so much as whether she seeks to vindicate a state duty that is “narrower” or “broader” than a federal duty. To the extent, the state law duty is narrower than or equal to the federal duty it survives, through what seems a sort of Venn diagram approach to preemption. Still, even if the state claim fails that test because it would impose a “broader” duty than can be found in federal law, it appears we may not find the claim preempted just because it conflicts with “any” federal requirement. Instead, we may find the state law claim preempted only if there exists a device-specific federal requirement, though this test admittedly finds no analogue when it comes to the state requirement clause interpreted in Riegel. Finally, should the state claim survive this far, we must ask whether it exists “solely by virtue” of the federal statutory scheme (unacceptable) or “predates” the scheme (acceptable). It’s no wonder that the difficulty of crafting a complaint sufficient to satisfy all these demands has been compared to the task of navigating between Scylla and Charybdis. Jean Macchiaroli Eggen, Navigating Between Scylla and Charybdis: Preemption of Medical Device “Parallel Claims, ” 9 J. Health & Biomedical L. 159, 161 (2013). Certainly the task we face in trying to apply the Court’s directions faithfully feels something like that.
How do Ms. Caplinger’s pleadings measure up to the Court’s announced preemption principles? Her complaint raises claims for strict products liability (alleging defective design and inadequate warning), breach of warranty, negligent misrepresentation, and negligence.[1] There’s no dispute in our case that device-specific federal requirements apply to Infuse: the device endured the premarket approval process. So the MDA will preempt all of Ms. Caplinger’s claims unless federal requirements impose duties that are at least as broad as those she seeks to vindicate through state law. See Riegel, 552 U.S. at 322-24, 128 S.Ct. 999.
It’s here the problems begin. When it comes to her design defect and *1341 breach of warranty claims, Ms. Caplinger has not attempted, in either the district court or this one, to identify a single parallel federal statute or regulation. For her failure to warn, negligence, and negligent misrepresentation claims, Ms. Caplinger has at least offered candidates for a parallel federal duty: 21 U.S.C. § 352 and 21 C.F.R. § 801.5. Through the combined effect of these provisions, a device’s warning label must not be “false or misleading in any particular,” 21 U.S.C. § 352(a), and generally must bear “directions under which the layman can use a device safely and for the purposes for which it is intended,” 21 C.F.R. § 801.5. But on inspection these regulations do not provide parallels to most of the state claims she seeks to pursue. They don’t because the federal regulations Ms. Caplinger cites govern only a device’s labeling and her state law claims go well beyond that, attacking not just Infuse’s label but also Medtronic’s advertising and oral and written representations to her, her doctor, and others. So as a matter of law Ms. Caplinger’s state law claims substantially exceed the potential scope of any federal regulation she’s identified.
Even with respect to her remaining labeling attack that falls within the arguable (Venn diagram) scope of the regulations she’s cited, another problem quickly emerges. Infuse is a prescription device. As federal regulations explain, that usually means it isn’t possible to prepare adequate directions for its safe use by laymen. Id. § 801.109. And for precisely this reason, 21 C.F.R. § 801.109 generally absolves manufacturers from liability under § 352 and § 801.5 so long as they label their prescription devices in a certain manner approved by the FDA. More than that, once the FDA approves a device’s label as part of the premarket approval process (as it has here), the manufacturer usually may not alter the label’s warnings without prior agency approval. See 21 U.S.C. § 360e(d). So in the end Ms. Caplinger relies exclusively on a legally inapplicable provision in her effort to establish a parallel claim (§ 801.5), fails anywhere to discuss the apparently applicable one (§ 801.109), and offers no answer to the conundrum how she might impose a state tort duty on Medtronic to revise a label that federal regulation precludes it from revising.
In these circumstances, we cannot see how the district court can be faulted for dismissing her claims. A district court may grant judgment as a matter of law under Federal Rule of Civil Procedure 12(b)(6) on the basis of an affirmative defense like preemption when the law compels that result. See Jones v. Bock, 549 U.S. 199, 212-15, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed.2004 & Supp. 2014) (collecting cases). Here, Medtronic argued for just that result. It didn’t dispute the veracity of any of Ms. Caplinger’s factual pleadings. Instead, it contended that, even taking all her factual pleadings as true, not a single regulation or statute exists in all the federal law books parallel to the state law claims she sought to pursue. In reply, Ms. Caplinger didn’t identify any viable parallel federal duty and so the district court quite reasonably concluded that the Medtronic had met its burden of showing that the law compelled dismissal of the complaint. See, e.g., Wolicki-Gables v. Arrow Int’l, Inc., 634 F.3d 1296, 1301-03 (11th Cir.2011) (affirming the dismissal of a complaint where the plaintiff failed to identify a parallel federal duty); Sprint Fidelis, 623 F.3d at 1206-07 (same); cf. Nelson v. State Farm Mut. Auto. Ins. Co., 419 F.3d 1117, 1120-21 (10th Cir.2005) (noting that the plaintiff “made no suggestion of a proper accrual date at the trial-court level” in response to *1342 the defendant’s statute-of-limitations affirmative defense).[2]
That’s not to say another plaintiff won’t ever be able to succeed where Ms. Caplinger has failed. For example, we don’t question the possibility that buried somewhere in the heap of federal law parallel provisions exist to save claims like Ms. Caplinger’s. After all, the FDA’s medical device regulations alone cover 592 pages of eight-point type and the Supreme Court has suggested that in searching for a parallel federal duty a plaintiff may scour them all as well as the statute itself. See Lohr, 518 U.S. at 495, 116 S.Ct. 2240. And lurking in there somewhere might be some answer to the apparent conundrum of how a plaintiff might use state law to require more label warnings that federal law seems to prohibit. But despite the challenge of Medtronic’s motion to dismiss, Ms. Caplinger has never — in all her voluminous briefs in the district court or this one — identified any legally viable federal requirement that might parallel and thus permit her claims. Neither are the courts under an obligation to perform that work for her, searching out theories and authorities she has not presented for herself. Indeed, we are especially hesitant to try that here, where Ms. Caplinger has been ably represented by counsel and the effort to supplement their efforts would require us to venture into a field in which so many others who’ve come before have struggled to find their way and there exists so much risk of going astray. See, e.g., Aguila, Inc. v. C.W. Mining, 545 F.3d 1258, 1268 (10th Cir.2008).[3]
Not only do we acknowledge others might succeed where Ms. Caplinger has failed. We also acknowledge that there’s always the possibility an antecedent dispute of material fact will preclude a court from being able to render judgment as a matter of law on an affirmative defense like preemption. In Bausch v. Stryker Corp., 630 F.3d 546 (7th Cir.2010), for example, the court found that the plaintiff lacked access to the certain confidential premarket approval documents for the device in question. Id. at 561. According to the court, the plaintiff didn’t and couldn’t know at the time of the motion to dismiss what federal requirements applied to the device in question. And without knowing, as a factual matter, what federal requirements did and didn’t apply to the device *1343 the court held it couldn’t resolve the legal question whether the state torts the plakhtiff wished to pursue did or didn’t parallel those federal requirements. In other words, a material question of fact (what federal requirements exist related to the device?) precluded the ability to issue a definitive ruling on the legal question (do the plaintiffs state law claims parallel federal requirements?).
But, once again, Ms. Caplinger has never suggested anything like that here. She’s never argued that she lacks access to any relevant documents for the Infuse device and she has never identified any other missing material fact essential to analyzing the preemption question. She has not so much as cited Bausch to suggest the preemption question presented in our case raises anything less than a purely legal question. In these circumstances we can again hardly fault the district court for granting judgment as a matter of law when no one has suggested a material dispute of fact exists that might require otherwise.[4]
Still, that doesn’t come close to ending our encounter with this ease. So far we’ve hewed to the path the Supreme Court mapped out in Lohr, Riegel, and Buckman, asking whether Ms. Caplinger’s state law claims seek to impose duties that parallel federal duties but do not depend solely on federal law. Recognizing the weakness of her position under the tests announced by the Supreme Court, she now seeks to suggest they don’t much matter. Even if no parallel federal requirements exist for her state tort claims, Ms. Caplinger argues that’s immaterial and her tort claims should survive preemption anyway. As she sees it, the fact that her suit concerns an off-label use is enough all by itself to insulate all her claims from preemption. Her reasoning goes something like this: When weighing whether a medical device is sufficiently safe to enter the market, the FDA usually examines the use the manufacturer intends the device to be put — its “on-label” use. See 21 U.S.C. §§ 360c(a)(2), 360e(d)(1)-(2). Because the agency’s studies and safety assessments generally focus on the device’s intended or on-label uses, she argues, it isn’t appropriate to preempt claims concerning off-label uses. Parallelism may be one way to avoid preemption, but in Ms. Caplinger’s estimation attacking off-label uses should be another entirely separate way around the problem. In not a single one of its many and involved encounters with the MDA has the Supreme Court so much as hinted at this alternative path around preemption. But Ms. Caplinger says its past obscurity shouldn’t stop us from recognizing it now.
*1344 This we decline to do.[5] Textually, § 360k(a) simply does not contain the distinction Ms. Caplinger would have us draw between suits addressing on-and off-label uses. The MDA says that a plaintiff may not invoke state law to impose “any requirement” that '“relates to the safety or effectiveness of [a] device ” that is “different from, or in addition to, any requirement applicable ... to the device ” under the FDCA. 21 U.S.C. § 360k(a) (emphasis added). Nothing depends on whether the plaintiff seeks to use state law to impose requirements for off-label uses or on-label uses. Rather, by its terms, the statute preempts any effort to use state law to impose a new requirement on a federally approved medical device.
Neither was Congress oblivious to the potential pitfalls (and promises) of off-label uses when it wrote such a broad preemption provision. Congress spoke directly to off-label uses in 21 U.S.C. § 396. There legislators went out of their way to protect the liberty of doctors and patients to use approved devices in any manner they wish — including off-label — instructing that “[n]othing in this chapter shall be construed to limit or interfere with the authority of a health care practitioner to prescribe or administer any legally marketed device.” 21 U.S.C. § 396. Congress added this language aware that experiments with off-label uses often prove vital to patients and wary about granting the federal government the power to deny doctors and patients the freedom to use approved devices in any way they think might help improve health or extend life. See Buckman, 531 U.S. at 351 n. 5, 121 S.Ct. 1012. But in preserving the liberty of doctors and patients to use approved devices however they wish, Congress also appeared to place a good deal of the risk on them rather than on manufacturers. Knowing about (even encouraging) off-label uses in § 396, Congress proceeded in § 360k(a) to preempt any state tort suit challenging the safety of a federally approved device without qualification about the manner of its use. Given that Congress well understood the difference between on- and off-label uses and exhibited its facility with those terms in § 396, the absence of any mention of them in § 360k(a) becomes all the harder to ignore, a sort of dog that didn’t bark. See, e.g., Roberts v. Sea-Land Servs., Inc., — U.S. —, 132 S.Ct. 1350, 1357 n. 5, 182 L.Ed.2d 341 (2012) (explaining that when Congress uses “different language” in different parts of the same statute, we normally “assume[] different meanings were intended” (quoting Sosa v. Alvarez-Machain, 542 U.S. 692, 711 n. 9, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004)) (internal quotation mark omitted)).
At this point in the proceedings and recognizing the absence of any textual authority for limiting § 360k(a)’s preemptive effect to challenges concerning on-label uses, Ms. Caplinger offers yet another amendment to her position, even as she continues to aim in the same direction. Now she says preemption should occur only when a state requirement differs from or adds to a federal regulation covering the “same subject.” And because there are no federal regulations on the “subject” of off-label uses, she reasons, off-label claims should not be preempted.
This theory faces a similar textual dead-end. Section 360k(a) doesn’t preempt only those state safety requirements addressing the “same subject” as federal requirements. Instead and again, the statute re *1345 quires preemption whenever state law is used to impose “any requirement ... which relates to the safety or effectiveness of the device.” To accommodate Ms. Caplinger’s view, a serious revision would be' required, mandating preemption only when the state imposes “any requirement ... which relates to the safety and effectiveness of the device and concerns the same subject matter as a federal requirement.” We discern nothing in the judicial power that might permit us to undertake such a revamping of Congress’s handiwork.
Not only does the statute lack Ms. Caplinger’s latest precondition to preemption, it once again contains evidence suggesting that Congress knew how to prescribe ones exactly like it when it wished. Section 360k(a) preempts any state requirement that (1) adds to or differs from federal requirements and (2) relates either to (a) a device’s “safety or effectiveness” or (b) “any other matter included in a [federal] requirement applicable to the device.” The category we’ve labeled (b) is noteworthy because there a federal requirement concerning the “same subject” as a state requirement may be a necessary precondition to preemption. Meanwhile, none of this is true of the first category — what we’ve labeled (a). That category specifies its preemptive reach plainly and broadly: any state requirement that adds to federal requirements and that relates to the safety or effectiveness of the device is preempted. No other qualification exists. It seems pretty clear, then, that Congress knew not only how to impose a “same subject” precondition to preemption but actually chose to do so in an adjacent clause. In this light, its decision not to include a “same subject” precondition in the clause under review seems all the more deliberate and difficult for a court to disregard. See Roberts, 132 S.Ct. at 1357 n. 5.
Beyond these textual impediments, Ms. Caplinger’s theories face precedential problems. Like Ms. Caplinger, the plaintiff in Riegel argued that a medical device was poorly designed for the particular off-label use his doctor made of it. The plaintiff in Riegel claimed, too, that the manufacturer failed to provide sufficient warnings about off-label uses. Even so, the Court didn’t hesitate to find all of his claims preempted. Once a device endures the premarket approval process, Riegel held, any state safety requirement differing from or adding to the body of federal regulations is preempted, even if that requirement comes in the guise of a general tort suit addressing only safety issues relating to off-label uses. See 552 U.S. at 322-24, 128 S.Ct. 999. Indeed, the Court told us unequivocally that “[s]tate tort law that requires a manufacturer’s [device] to be safer ... than the model the FDA has approved disrupts the federal scheme.” Id. at 325, 128 S.Ct. 999. And the Court proceeded to dismiss the plaintiffs design defect and failure to warn claims addressing off-label uses. We fail to see how we might faithfully reach a different view here.
Our conclusion finds support in circuit precedent too. Several circuits have already recognized that once a device survives premarket approval it’s immune from state tort suits that seek to impose different or additional safety-related duties like those alleged here. See, e.g., Stengel v. Medtronic, Inc., 704 F.3d 1224, 1233 (9th Cir.2013) (en banc); Walker v. Medtronic, Inc., 670 F.3d 569, 577 (4th Cir.2012); Hughes v. Bos. Scientific Corp., 631 F.3d 762, 768 (5th Cir.2011); Wolicki-Gables, 634 F.3d at 1301; Howard v. Sulzer Orthopedics, Inc., 382 Fed.Appx. 436, 439-40 (6th Cir.2010); Bausch, 630 F.3d at 552-53; Sprint Fidelis, 623 F.3d at 1205; see also Helveston, supra, at 1111 (explaining that “the MDA grants manufacturers of *1346 devices that have gone through the premarket approval process immunity from nearly all state law claims”). On the other side of the ledger, Ms. Caplinger cites no circuit authority supporting any of her various arguments for reversal.
Instead, she notes that the FDA recently submitted a legal brief in another case that arguably endorses her view that § 360k(a) preempts only claims concerning on-label uses and allows any claim concerning off-label uses to proceed. See Brief for the United States as Amicus Curiae at 8-9, Medtronic, Inc. v. Stengel, No. 12-1351 (U.S. 2014). But Ms. Caplinger neglects to mention that the agency itself not long ago read the MDA preemption provision just as we have, as preempting any claim that seeks to impose a state law duty that differs from or adds to federal duties, whether those duties concern on- or off-label uses. See Brief for the United States as Amicus Curiae Supporting Respondent at 8, Riegel, 552 U.S. 312, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008) (No. 06-179). Neither does the agency’s latest brief mention — let alone seek to explain why it has deviated from — its prior litigating position. And the FDA acknowledges candidly that its (current) litigating position would require a court to reject “every [circuit] case since Riegel ” because none has suggested that § 360k(a)’s preemptive effect depends on a dichotomy between on- and off-label uses. See Brief for the United States as Amicus Curiae, Stengel, supra, at 1341-42. Without any good reason to defer to the FDA’s current position over its previous position — and the textual and precedential acrobatics that would be required to land there — we decline the attempt.
Aside from statutory terms, structure, and precedent there remains the question of statutory purpose. The business of hazarding a guess about the intent of a legislative body composed of more than 500 individuals, each with his or her own interests and ends, always bears its risks. But as explored by the parties and amicus, the legislative history suggests that to the extent Congress considered any of the questions here it opted for the broadest available preemption provision in circulation during the drafting process. Compare’ H.R. 11124, 94th Cong. § 2 (as reported by H. Comm, on Interstate & Foreign Commerce, Feb. 29, 1976), with S. 510, 94th Cong. § 704 (as passed by Senate, April 17, 1975).
It’s easy to imagine, too, why Congress adopted a preemption provision that doesn’t distinguish between on- and off-label uses. Any additional state duties on top of those imposed by federal law, even if nominally limited to off-label uses, might check innovation, postpone access to lifesaving devices, and impose barriers to entry without sufficient offsetting safety gains. For example, a state’s judgment that a device is unsafe for a particular off-label use could require design changes that adversely affect the device’s safety for on-label uses. Requiring manufacturers to comply with fifty states’ warning requirements concerning off-label uses, on top of existing federal on-label warning requirements, might introduce sufficient uncertainty and cost that manufacturers would delay or abandon at least some number of life-saving innovations. See, e.g., Sharkey, supra, at 361; Samuel Issacharoff & Catherine M. Sharkey, Backdoor Federalization, 53 UCLA L.Rev. 1353, 1385-86 (2006); Catherine M. Sharkey, Products Liability Preemption: An Institutional Approach, 76 Geo. Wash. L.Rev. 449, 483 (2008). Regulating any aspect of a device also raises the possibility of “spillover effects” from rules that “benefit in-state residents” at the expense of out-of-staters. Issacharoff & Sharkey, supra, at 1386-87. In short, we can see a number of ways in *1347 which a lawsuit nominally limited to attacking an off-label use might have knock-on effects for those seeking access to a device for its on-label use. And the Supreme Court has explained that “the text of the statute ... suggests that the solicitude for those injured by FDA-approved devices ... was overcome in Congress’s estimation by solicitude for those who would suffer without new medical devices if juries were allowed to apply the tort law of 50 States to all innovations.” Riegel, 552 U.S. at 326, 128 S.Ct. 999.
Not everyone may agree with how Congress balanced the competing interests it faced in this sensitive and difficult area. We can surely imagine a different statute embodying a different judgment. But strike a balance Congress had to and did, and it is not for this court to revise it .by beating a new path around preemption nowhere authorized in the text of the statute and nowhere recognized in any of the Supreme Court’s many forays into this field.
Affirmed.

. Ms. Caplinger also pursues claims for fraud, but we don't have to consider whether they survive preemption because we agree with the district court that Ms. Caplinger's complaint doesn’t identify the who, what, when, where. and how of the alleged fraud with the specificity required by Federal Rule of Civil Procedure 9(b). See, e.g., United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 726-27 (10th Cir.2006).

. One might read some of these cases as suggesting that a plaintiff's complaint must anticipate the affirmative defense of preemption and identify parallel federal requirements. See, e.g., Wolicki-Gables, 634 F.3d at 1301-03; Sprint Fidelis, 623 F.3d at 1206-07. That far we do not go. After all, it is for defendants to prove their affirmative defenses in their motions, not for plaintiffs to disprove them in their complaints. See Jones, 549 U.S. at 212-14, 127 S.Ct. 910; Bausch v. Stryker Corp., 630 F.3d 546, 561 (7th Cir.2010). But all the same it remains the case that a defendant may win dismissal as a matter of law with an affirmative defense if it can show that, without respect to any material dispute of fact, the law compels that result — exactly what happened here. See, e.g., Jones, 549 U.S. at 215, 127 S.Ct. 910; Wright & Miller, supra, § 1357 (collecting cases).

. Ms. Caplinger’s warranty claims, both express and implied, also fail because they depend on conclusory allegations. The operative complaint contains no well-pleaded facts suggesting, for example, what Medtronic expressly promised her, how those promises related to the Infuse device, or how they became part of the basis of the bargain. Likewise, the complaint doesn't allege any facts that would suggest any species of implied warranty claim. Regardless whether Oklahoma or Missouri state law happens to apply to this case (a question the parties debate but proves immaterial), Ms. Caplinger simply hasn't alleged "enough facts to state a claim to relief that is plausible on its face.” Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); see also Okla. Stat. Ann. tit. 12A, §§ 2-313 to -315; Mo. Ann. Stat. §§ 400.2-313 to -315.

. Our colleague states that Ms. Caplinger's efforts to identify a parallel federal requirement have not proven "model[s] of clarity” but suggests that we should still remand the case to allow Ms. Caplinger one more chance to crack open the federal register and unearth some parallel requirement or perhaps amend her complaint. See post at 1350-51; id. at 14. Respectfully, however, Ms. Caplinger has already amended her complaint once and in this appeal she does not seek another chance to do so. Indeed, she nowhere challenges the district court’s ruling denying her motion 'to file a second amended complaint; instead, she chooses to stand and fight on the basis of her existing pleadings. Neither do we see a lawful basis for remanding the case for further proceedings on the present pleadings. Ms. Caplinger has been repeatedly challenged to identify some federal regulation or statute on the books that parallels her state law claims and she has repeatedly failed to do so. Accordingly, Medtronic is now entitled to the judgment it has long sought on its affirmative defense.

. Neither do we understand our colleague’s separate writing as taking a different view. His difference of opinion appears to be confined to the question whether a parallel federal requirement might exist to save this suit.